IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF:<br>1. A GRAY TOYOTA COROLLA, LICENSE PLATE NUMBER MCY0704 (Pennsylvania), VIN # 1NXBE40E89Z074040;<br>2. A GOLD FORD FREESTYLE, LICENSE PLATE NUMBER LHK5361 (Pennsylvania), VIN # 1FMDK021X7GA32601. | Case Nos. 24-mj-157<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Franklin Fernandez, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on the following vehicles: (1) a gray Toyota Corolla, bearing Pennsylvania license plate number MCY0704, vehicle identification number ("VIN #")1NXBE40E89Z074040 ("**SUBJECT VEHICLE 1**"); and (2) a gold Ford Freestyle, bearing Pennsylvania license plate number LHK5361, VIN 1FMDK021X7GA32601 ("**SUBJECT VEHICLE 2**") (together, the "**SUBJECT VEHICLES**"). Based on the facts set forth in this affidavit, I believe that the **SUBJECT VEHICLES** are presently being used in furtherance of violations of Title 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), 18 U.S.C. § 924(a)(1)(A) (false statement to a federal firearms licensee), 18 U.S.C. § 922(o) (transfer or possession of a machine gun), 18 U.S.C. § 933 (trafficking in firearms), 18 U.S.C. § 922(d) (transferring firearms in furtherance of a felony), and 18 U.S.C. § 932 (straw purchasing of firearms), and 21 U.S.C. § 846 (conspiracy to distribute a controlled substance); 21 U.S.C. § 841(a)(1) (distribution and possession with

intent to distribute a controlled substance); and 21 U.S.C. § 843(b) (using a communication facility to cause or facilitate the commission or narcotics trafficking offenses), and that there is probable cause to believe that the installation of a tracking devices on the **SUBJECT VEHICLES** and use of the tracking devices will lead to evidence, contraband, other items illegally possessed, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent with the Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since March 2018. Prior to ATF, I worked for approximately four years as a criminal investigator with the Naval Criminal Investigative Service (NCIS) in Virginia Beach, Virginia, and was responsible for felony level investigations that involved the United States Navy and Marine Corps. Among the cases I investigated while at NCIS, I was focused on death cases, sexual assault cases, physical threat cases and theft of United States government property cases. I am currently assigned to ATF Philadelphia Group III, whose primary responsibilities include investigating violent crime as well as individuals or groups who commit violations of federal laws in Philadelphia, Pennsylvania. I have successfully completed the Criminal Investigator Training program (CITP) as well as the ATF Special Agent Basic Training program (SABT). As a result of my training and experience, and that of other investigators, I am familiar with investigations involving violations of Federal firearms and narcotics laws and based on my prior investigations I am familiar with Federal search warrants and seizing evidence in accordance with the probable cause set forth in the affidavits. I have authored and executed Federal search warrants in the past and have provided affidavits at the state and Federal level in support of similar search warrants to what we are now asking. During my career, I have received extensive training regarding

violations of federal law, with an emphasis on federal firearms violations. My law enforcement experience has included numerous investigations of firearms-related offenses. These investigations have resulted in the seizure of firearms and various controlled substances. I have conducted numerous interviews with individuals charged with firearms violations. Through my experience in using vehicle trackers to further criminal investigations, I know that individuals involved in criminal activity show a pattern of life through the path of their vehicle's travels. Through my experience, I know this information to be invaluable in determining where suspects were before, during, and after the commission of crimes.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

1. In November 2022, the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") began a firearms and narcotics related criminal investigation that currently focuses on the Drug Trafficking Organization1 ("DTO") Low Key Music ("LKM"). LKM primarily operates in the Kensington area of Philadelphia, Pennsylvania. This investigation pertains to possible violations of Title 18 U.S.C. § 922(a)(1)(A) (dealing in firearms without a license), 18 U.S.C. § 924(a)(1)(A) (false statement to a federal firearms licensee), 18 U.S.C. § 922(o) (transfer or possession of a machine gun), 18 U.S.C. § 933 (trafficking in firearms), 18 U.S.C. §

---

[1] As defined by the Department of Justice ("DOJ"), drug trafficking organizations ("DTOs") are complex organizations with highly defined command-and-control structures that produce, transport, and/or distribute large quantities of one or more illicit drugs.

922(d) (transferring firearms in furtherance of a felony), and 18 U.S.C. § 932 (straw purchasing of firearms), and 21 U.S.C. § 846 (conspiracy to distribute a controlled substance); 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute a controlled substance); and 21 U.S.C. § 843(b) (using a communication facility to cause or facilitate the commission or narcotics trafficking offenses) committed by Jerry RIVERA and others.

2. In November 2022, agents reviewed a Philadelphia Police Department Report ("PPD") wherein PPD officers located a male suffering from multiple gunshot wounds throughout his body. The male, later identified as Angel Santos, was transported to Temple University Hospital where he succumbed to his injuries. While investigating the incident, the PPD recovered a Century Arms, Model Mini Draco, 7.62 caliber semiautomatic pistol bearing serial number 22PG-1843[2] and a Century Arms, model Mini Draco, 7.62 caliber semiautomatic pistol, serial number 22PG-5119[3]. ATF determined that both firearms were originally purchased in Georgia by confidential source ("CS-1") prior to CS-1 agreeing to cooperate with law enforcement.

3. ATF investigators determined that from May 18, 2018, to October 20, 2022, CS-1[4] had purchased approximately 45 firearms of which approximately ten of these firearms have

---

[2] The Century Arms, Model Mini Draco, 7.62 caliber semiautomatic pistol bearing serial number 22PG-1843, was originally purchased by CS-1 on 8/29/2022 in GA and recovered on 10/7/2022 in Philadelphia, PA with a 39-day time to recovery.

[3] The Century Arms, model Mini Draco, 7.62 caliber semiautomatic pistol, serial number 22PG-5119, was originally purchased by CS-1 on 9/2/2022 in GA and recovered on 10/24/2022 in Philadelphia, PA with a 52-day time to recovery.

[4] The CI is currently signed up as an informant with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and has been cooperating for months. The CIs information has been vetted and information provided to investigators has been corroborated by law enforcement. The CI is currently facing federal charges for narcotics trafficking and related offenses. The CI is cooperating in the hope of receiving charging and/or sentencing

been recovered by law enforcement. The approximate "Time to Recovery[5]" of these firearms by law enforcement was between 31 and 532 days.

4.      Four of these ten firearms were recovered in Philadelphia, Pennsylvania, within approximately 31, 39, 39, and 72 days respectively of their purchase by CS-1 in South Carolina and Georgia. Specifically, three (3) Century Arms Mini Draco 7.62 caliber pistols purchased by CS-1 were recovered in the Kensington neighborhood by PPD in two separate incidents occurring in October of 2022.  A fourth firearm purchased by CS-1 was recovered in Philadelphia in December of 2022. Five additional firearms were recovered in the state of Georgia within approximately 35, 88, 150, 331, and 532 days respectively of their purchase by CS-1 in Georgia.  Most recently, a firearm was recovered in Aiken, South Carolina on January 17, 2023, approximately 89 days after it was purchased by CS-1 in Georgia.

5.      In April 2023, CS-1 was interviewed and admitted to investigators that he/she straw purchased[6] and transported firearms at the direction of LKM leader Joxsan TORRES (AKA "K/Koala") AYALA. Approximately 20-25 of the firearms mentioned above were sold to TORRES AYALA in Philadelphia, Pennsylvania. TORRES AYALA then provided the firearms

---

consideration in connection with his crimes.  In addition, the CS has been paid, in the form of reimbursements for his/her expenses, for his/her involvement in this investigation.

[5] "Time to Recovery" is a term used by investigators which counts the number of days from when a firearm is purchased at an FFL or stolen, until the day it is recovered in a crime by a law enforcement agency.
*Based on 2021 statistics for firearms recovered in the United States, maintained by the ATF.
[6] A straw purchaser, as defined by the Bureau of Alcohol, Tobacco, Firearms and Explosives, involves someone who purchases a gun from an Feder Firearms Licensee (FFL) and falsely purports to be the actual purchaser when in reality is purchasing the firearm for another individual. Straw purchasing involves making false statements to an FFL and is a violation of federal law.

to his associates, who are also members of LKM. CS-1 stated he/she also transported multiple machine gun conversion devices[7] to TORRES AYALA in Philadelphia.

## LOW KEY MUSIC ("LKM") STRUCTURE AND ORGANIZATION

6. In June 2023, CS-1 provided ATF investigators with a detailed hierarchy of co-conspirators within LKM. CS-1 identified Joxsan TORRES AYALA as the head of the organization. CS-1 stated TORRES AYALA lives in Florida but makes occasional trips to the Philadelphia area to manage LKM and retrieve and transport the proceeds of LKM's illicit narcotics proceeds to Florida. CS-1 reported that the DTO is a source of various illicit narcotics, most notably fentanyl.

7. CS-1 identified a single unmarked Commonwealth of Pennsylvania photograph of Luis CABRERA AYALA (AKA "CHIVA") as the brother of TORRES AYALA and manager of the illicit narcotics operation in Philadelphia in TORRES AYALA's absence. CS-1 identified CABRERA AYALA as one of at least (4) people he/she knew to package bulk narcotics for resale for LKM. Investigators believe CABRERA AYALA resides at 7722 Richard Street, Philadelphia, Pennsylvania.

8. CS-1 identified a single image photograph of Anthony DELEON (AKA "BLANCO") as a high-ranking member of TORRES AYALA's drug trafficking organization. CS-1 reported DELEON is one of at least 4 people he/she knew to package bulk narcotics for

---

[7] A machinegun conversion device is an accessory that can be affixed to a pistol that, when installed, allows semiautomatic pistols to fire in an automatic capacity. Most machinegun conversion devices protrude from the pistol's backplate; however, some allow the pistol's backplate to remain flush with the back of the gun. There are numerous slang terms used to reference machinegun conversion devices, such as "Glock switch", "switch", "turkey", and "button". Other terms exist, as do variations of the aforementioned terms.

LKM.  CS-1 also identified a 2014 Grey Jeep Grand Cherokee bearing Pennsylvania registration LYE-1168 parked in the rear of 2823 Rhawn Street, Philadelphia, Pennsylvania as DELEON's vehicle.

9. CS-1 identified a still image of Jerry RIVERA ("J. RIVERA") as one of at least 4 people he/she knew to package bulk narcotics for resale for LKM.  J. RIVERA is one of the occupants of 3448 Ormes Street in Philadelphia and CS-1 stated he knew Jerry RIVERA to drive a grey Toyota car.

10. CS-1 identified a single image photograph of Shakil Pizarro LOPEZ (AKA "SHAKO") as one of at least 4 people he/she knew to package bulk narcotics for LKM.

11. CS-1 identified a single image photograph of Mark RIVERA (AKA "OSCAR/OSKA") as a manger of street level sales manager[8] for LKM.  CS-1 further provided ATF investigators with the contact number 267-595-9980 for Mark RIVERA and identified the area of "C" Street and Somerset Street in Philadelphia, Pennsylvania as Mark RIVERA's general area of operation.

12. On or about June 23, 2023, agents received a phone call from CS-1.  CS-1 informed agents that he/she contacted a male known to CS-1 as "Oscar".  ATF investigators know "Oscar" to be Mark RIVERA. CS-1 stated that during the phone call with "Oscar", he/she overheard a second male, known to CS-1 as "Chiva", speaking as well.  ATF investigators know "Chiva" to be Luis CABRERA AYALA.  CS-1 stated that Mark RIVERA informed CS-1 that he was with CABRERA AYALA to pick up "work", referring to fentanyl. CS-1 reported that he/she remained connected on the phone with Mark RIVERA and overheard CABRERA AYALA

---

[8] A street level manager in a DTO typically delivers bulk narcotics to persons selling the narcotics on the street. They also will collect money from narcotics sales and manages the sellers.

instructing Mark RIVERA that he was giving Mark RIVERA 160 bundles of fentanyl and expected an indecipherable amount of money in return.

13. Investigators recognize the term "work" to be a reference to illicit narcotics to be sold and recognize "bundles" to be a commonly utilized slang term to describe a small, packaged quantity of heroin and/or fentanyl, generally between 12-18 packets.

14. On or about June 26, 2023, another confidential source[9] ("CS-2") met with DEA agents at a prearranged location in Philadelphia, Pennsylvania. Prior to the meeting. CS-2 met with a man he knows as "Oska". This man provided CS-2 with a sample of alleged fentanyl to interest CS-2 to purchase fentanyl from "Oska" in the future. CS-2 provided the agents with the suspected fentanyl, which CS-2 received immediately prior to the meeting with agents. CS-2 described the male as a light complected Puerto Rican male, approximately 5'7" and 180 pounds and is known to go by the nickname "Oska". CS-2 further reported to DEA agents that the sample of fentanyl was provided in the area of C Street and Cambria Street in Philadelphia, Pennsylvania, free of charge for quality assurance purposes. It should be noted that this is approximately one block from the area identified by CS-1 as Mark RIVERA's area of operation. The sample was field tested and indicated positive for the presence of fentanyl. The sample of suspected fentanyl was processed as evidence and submitted to the DEA Northeast Laboratory for analysis and safekeeping.

15. During their interactions, "Oska" indicated a willingness to sell fentanyl to CS-2 in the future.

---

[9] CS-2 has been a DEA Confidential Source for approximately 4 years. CS-2 is currently a paid confidential source and has participated in numerous drug investigations. CS-2 has demonstrated to be reliable, providing accurate information independently corroborated by investigators leading to seizures of drugs and arrests of offenders.CS-2 does not have any known charges currently pending.

16. On June 28, 2023, DEA agents provided a photograph of Mark RIVERA to CS-2 who positively identified Mark RIVERA as "Oska", the source of the aforementioned free sample of suspected fentanyl.

17. Mark RIVERA has been observed by agents in Philadelphia multiple times during the course of this investigation. Mark RIVERA has been most often observed in the area of the intersection of C Street and Somerset Street in Philadelphia.

18. On or about October 27, 2023, CS-1 contacted Mark RIVERA via phone call and Mark RIVERA agreed to sell CS-1 bulk fentanyl in Philadelphia, Pennsylvania. Mark RIVERA agreed to sell CS-1 approximately 70g of bulk, loose fentanyl for approximately $2500. The following day, October 28, 2023, CS-1 contacted J. RIVERA by Instagram username "stop_lxckin" video messenger to inquire if J. RIVERA would also be willing to sell him/her fentanyl. J. RIVERA explained he could get CS-1 the fentanyl he/she requested.

19. On October 30, 2023, Mark RIVERA explained that he could not get the product for the price he had originally quoted and offered to sell CS-1 bulk-packaged fentanyl instead. CS-1 explained he wanted the bulk fentanyl and Mark RIVERA said he would arrange to get the product on October 31, 2023. On October 31, 2023, Mark RIVERA stated he was still trying to get the bulk fentanyl and after an argument between CS-1 and Mark RIVERA about the broken promise, Mark RIVERA ceased communications with CS-1.

## J. RIVERA'S USE OF THE SUBJECT VEHICLES IN CONNECTION WITH CRIMINAL ACTIVITY

20. On October 31, 2023, CS-1 contacted J. RIVERA at Instagram username "stop_lxckin" video messenger and told him that Mark RIVERA was not able to facilitate the

bulk fentanyl purchase. J. RIVERA agreed to sell the bulk fentanyl to CS-1 on November 1, 2023.

21.     On November 1, 2023, CS-1 contacted J. RIVERA by Instagram username "stop_lxckin" video messenger and J. RIVERA told him/her he would meet him/her at the McDonald's parking lot located at 2801 Cottman Avenue, Philadelphia, Pennsylvania. On that same date, ATF and DEA agents provided 2500.00 in government funds to CS-1 and CS-3[10] for the controlled purchase of bulk fentanyl from J. RIVERA.

22.     On November 1, 2023, CS-1 and CS-3 parked in the McDonald's parking lot located at 2801 Cottman Avenue, Philadelphia, Pennsylvania. J. RIVERA arrived a short time later and was driving the **SUBJECT VEHICLE 1**. J. RIVERA entered CS-1 and CS-3's vehicle and provided them with 116g (gross weight) of a white powdery substance suspected to be a fentanyl mixture and 88g (gross weight) of a white powdery substance suspected to be a narcotic's cutting agent. CS-1 and CS-3 in return provided J. RIVERA with $2100 in government funds for the suspected narcotics and cutting agent. This interaction with J. RIVERA was recorded using both audio and video technology. J. RIVERA advised CS-1 on how to cut the product to a lesser strength and also explained how to cut the product a second time to a lesser strength. CS-1 then entertained a future purchase from J. RIVERA of more of the fentanyl at a later date. During this transaction J. RIVERA also stated to CS-1 and CS-3 that he had a fully

---

[10] CS-3 has been a DEA Confidential Source for approximately one and a half years and is also an ATF Confidential Source. CS-3 is currently a paid confidential source and has participated in numerous drug and firearm investigations. CS-3 has demonstrated to be reliable, provided accurate information independently corroborated that led to the seizure of drugs and the arrests of offenders. CS-3 does not have any known charges pending but has been arrested in the past for drug and firearms related charges.

automatic (machine gun) Glock pistol in **SUBJECT VEHICLE 1**.  J. RIVERA left the CS vehicle and returned to **SUBJECT VEHICLE 1** and drove out of the parking lot.

23.     Law enforcement positioned around the area of the McDonald's attempted to follow J. RIVERA as he left the parking lot in **SUBJECT VEHICLE 1.** Due to J. RIVERA's high rate of speed, erratic driving and disregard for traffic safety regulations, investigators were only able to track J. RIVERA for a short period of time and subsequently lost his direction of travel.

24.     On November 15, 2023, at the direction of ATF and DEA agents, CS-1 contacted J. RIVERA several times utilizing the Apple iPhone's "Facetime" feature to initiate a previously planned controlled purchase of approximately bulk fentanyl and a Glock Model 20, 10mm caliber pistol that had been converted to a machine gun capable of automatic gunfire.  CS-1 and CS-3 parked in the McDonald's parking lot located at 2801 Cottman Avenue, Philadelphia, Pennsylvania. J. RIVERA arrived a short time later and was driving the **SUBJECT VEHICLE 2.** J. RIVERA entered CS-1 and CS-3's vehicle and provided them with approximately 204 grams of (gross weight) fentanyl, and a **Glock Model 20 10mm caliber pistol bearing serial number BXVB518**[11]**,** loaded with fifteen (15) 10mm rounds of ammunition, in exchange for $5,900 in U.S. government funds. CS-1, CS-3 and J. RIVERA agreed CS-1 and CS-3 owed J. RIVERA an additional $250 for the transaction that would be paid at a later date. This interaction with J. RIVERA was recorded using both audio and video technology.

25.     Law enforcement positioned around the area of the McDonald's attempted to follow J. RIVERA as he left the parking lot in **SUBJECT VEHICLE 2.** Due to J. RIVERA's

---

[11] ATF agents later inspected, and field tested the Glock firearm and determined it was internally altered for the intention of allowing it to function as a machine gun, capable of automatic gunfire.

high rate of speed, erratic driving and disregard for traffic safety regulations, investigators were only able to track J. RIVERA for a short period of time and subsequently lost his direction of travel.

26. On November 27, 2023, at the direction of ATF and DEA agents, CS-3 contacted J. RIVERA with the intention of meeting him to pay off the $250 debt. J. RIVERA agreed to meet CS-3 in the McDonald's parking lot located at 2801 Cottman Avenue, Philadelphia, Pennsylvania. On the same date, CS-3 parked in the McDonald's parking lot. A short time later J. RIVERA arrived in **SUBJECT VEHICLE 2.** J. RIVERA exited **SUBJECT VEHICLE 2** and entered CS-3's vehicle. CS-3 paid J. RIVERA the $250 debt and J. RIVERA agreed on a future date to sell CS-3 a rifle and a handgun, both of which would be capable of fully automatic gunfire. This interaction with J. RIVERA was recorded using both audio and video technology.

27. Law enforcement positioned around the area of the McDonald's attempted to follow J. RIVERA as he left the parking lot in **SUBJECT VEHICLE 2.** Shortly after, J. RIVERA pulled into a gas station, he then exited the gas station lot, travelled across multiple lanes of traffic, turned down a side street and made a U-turn to backtrack the way he came[12].

28. According to Department of Transportation records, the Toyota Corolla bearing Pennsylvania license plate number MCY-0704 **SUBJECT VEHICLE 1** is registered to "Jermaine and Kasaan Beard Smith" with the address of 2013 West Indiana Avenue, Philadelphia, Pennsylvania.

---

[12] From my training, knowledge, and experience, I recognize J. RIVERA's driving patterns to be consistent with countersurveillance detection. This type of driving activity is commonly used by suspects attempting to recognize law enforcement surveillance activities over time, distance and change of direction.

29.     According to Department of Transportation records, the gold Ford Freestyle, bearing Pennsylvania license plate number LHK5361 **SUBJECT VEHICLE 2** is registered to "Cassandra Nicole Cook" with the address of 4603 North Camac Street, Philadelphia, Pennsylvania.

**SUBJECT VEHICLE 1, HARTEL AVE, AND DTO CONNECTIONS**

30.     On November 3, 2023, investigators searched law enforcement databases for license plate reads on the **SUBJECT VEHICLE 1** and compiled the following results:

    a.   11/13/2023 4:49 a.m. – 7723 Richard Street, Philadelphia, PA

    b.   10/24/2023 11:59 p.m. – Rowland Ave. & Lansing St., Philadelphia, PA

    c.   10/21/2023 5:04 a.m. – 1272 Bristol Pike, Bensalem, PA

    d.   10/02/2023 2:13 a.m. – 3301 Hartel Ave., Philadelphia, PA

    e.   08/21/2023 11:13 p.m. – 7800 Rowland Ave., Philadelphia, PA

31.     Investigators noted the **SUBJECT VEHICLE 1** has been repeatedly parked in close proximity to 3306 Hartel Avenue, Philadelphia, Pennsylvania. This information was deemed relevant to investigators due to the following information:

32.     In September 2023, the United States Postal Inspector Service (USPIS) identified a Priority Mail parcel addressed to "Kati Velasquez, 3306 Hartel Avenue, Philadelphia, PA 19136". This parcel was mailed on September 7, 2023, from Menifee, California and weighed approximately 1 pound 0.8 ounces.  The Hartel Avenue parcel was intercepted and on September 15, 2023, federal search warrant 23-MJ-1654 was authorized by the Honorable Carol S. Wells, U.S. Magistrate Judge, Eastern District of Pennsylvania. On September 18, 2023, the parcel was opened by investigators and its contents included a plastic wrapped stack of notebook paper. Concealed in the middle of the stack of paper was a vacuum sealed plastic bag with a tan powder

13

substance. The tan powder field tested positive for fentanyl, the total weight of the powder and plastic bag were approximately 15.7g.

33.     The IP address **47.203.49.20** that tracked the above parcel containing Fentanyl is directly linked to Instagram Account "la____k" (ID#2269155676), which is the Instagram account used by Joxsan TORRES-AYALA, the leader of the DTO LKM according to CS-1.

## SUBJECT VEHICLE 2, RICHARD STREET AND DTO CONNECTIONS

34.     On November 29, 2023, investigators searched law enforcement databases for license plate reads on the **SUBJECT VEHICLE 2** and compiled the following results:

  a. 11/13/23 4:49 a.m. – 7723 Richard Street, Philadelphia, PA

  b. 10/30/23 9:36 p.m. – 2813 "C" Street, Philadelphia, PA

  c. 9/13/23 11:35 p.m. – 913 West Indiana Avenue, Philadelphia, PA

35.     After comparing the license plate reads on the **SUBJECT VEHICLES** investigators noted the **SUBJECT VEHICLES** were both parked in front of 7723 Richard Street, Philadelphia, Pennsylvania, on November 13, 2023, at 4:49 a.m. Investigators know LKM DTO member CABRERA AYALA resides on this same street at 7722 Richard Street, Philadelphia, Pennsylvania.

36.     Law enforcement surveillance has positively identified J. RIVERA as the driver of the **SUBJECT VEHICLES**. In addition, CS-1 and CS-3 positively identified J. RIVERA as the driver of the **SUBJECT VEHICLE 1** on November 1, 2023, in Philadelphia, Pennsylvania; CS-1 and CS-3 positively identified J. RIVERA as the driver of **SUBJECT VEHICLE 2** on November 15, 2023, in Philadelphia, Pennsylvania; and CS-3 positively identified J. RIVERA as the driver of **SUBJECT VEHICLE 2** on November 27, 2023, in Philadelphia, Pennsylvania.

Due to these facts, I know that the **SUBJECT VEHICLES** are presently within the Eastern District of Pennsylvania.

37. On December 14, 2023, the Honorable Scott W. Reid, United States Magistrate Judge, Eastern District of Pennsylvania, authorized a tracking warrant for the **SUBJECT VEHICLES** and vehicle trackers were subsequently installed by ATF agents on the **SUBJECT VEHICLES**.

## RECENT USE OF THE SUBJECT VEHICLES IN CONNECTION WITH CRIMINAL ACTIVITY

38. I know, based on information gathered during law enforcement physical surveillance and electronic surveillance of the currently installed vehicle trackers, that members of the LKM DTO have continued to use the **SUBJECT VEHICLES**. I observed that the **SUBJECT VEHICLES** have been regularly parked together in near 3306 Hartel Avenue, Philadelphia, Pennsylvania, which is a suspected narcotics stash house. On these occasions the **SUBJECT VEHCILES** were both parked within a short walking distance to this suspected stash house on December 29, 2023, January 8, 9, 11, 12 and 14, 2024. More specifically, on January 8, 2024, at approximately 6:49 p.m., **SUBJECT VEHICLE 1** parked directly behind **SUBJECT VEHICLE 2** on the 7700 block of Rowland Avenue, Philadelphia, Pennsylvania. The occupants exited the **SUBJECT VEHICLES** and walked together down the alley toward the suspected narcotics stash house at 3306 Hartel Avenue, Philadelphia, Pennsylvania.

## RECENT UNDERCOVER PURCHASE OF EVIDENCE FROM J. RIVERA AND SUBJECT VEHICLE 1

39. On January 10, 2024, at the direction of ATF and DEA agents, CS-2 purchased approximately 196 grams of suspected fentanyl from J. RIVERA for $4625 in government funds.

J. RIVERA was operating **SUBJECT VEHCILE 1** during this controlled purchase. Physical and electronic surveillance was maintained on **SUBJECT VEHICLE 1** and J. RIVERA from 3139 Holly Road, Philadelphia, Pennsylvania, to the controlled purchase location at CVS located at 7720 Bustleton Street, Philadelphia, Pennsylvania, where the controlled purchase took place.

40. To track the movement of the **SUBJECT VEHICLES** effectively and to decrease the chance of detection, I seek authorization to place a tracking device on the **SUBJECT VEHICLES** while they are in the Eastern District of Pennsylvania.

41. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. I seek this authorization because of the daytime visibility of the vehicle's anticipated location, the subject's likely possession of firearms and the fact that the subject appears to use the **SUBJECT VEHICLES** during daylight hours.

42. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

43. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of ATF or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **SUBJECT VEHICLES** within the Eastern District of Pennsylvania

within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **SUBJECT VEHICLES** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter private property and/or move the **SUBJECT VEHICLES** as necessary to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Pennsylvania.

44. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

45. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the ATF, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These

documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

### REQUEST TO SEAL

46. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the ATF, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

/s/ Franklin Fernandez
Franklin Fernandez
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to
before me on January  29  , 2024

/s/ PAMELA A. CARLOS
_____
HONORABLE PAMELA CARLOS
UNITED STATES MAGISTRATE JUDGE